**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF:<br><br>In re Arizona Academy of Science and Technology, Inc.,<br><br>    Debtor.<br><br>Arizona Academy of Science and Technology, Inc.,<br><br>    Appellant,<br><br>v.<br><br>Charter Asset Management Fund LP,<br><br>    Appellee. | No. CV-18-01954-PHX-DWL<br>BK NO. 2:16-bk-09573-SHG<br>ADV NO. Adv. No. 2:17-ap-00145-SHG<br>BAP NO. BAP No. AZ-18-01145<br><br>**ORDER** |

## INTRODUCTION

Arizona Academy of Science and Technology ("Debtor") is a charter school that receives most of its funding from the state of Arizona. Beginning in 2015, Debtor entered into a series of factoring agreements with Charter Asset Management Fund, LP ("Creditor"), a California company in the business of making loans to charter schools. Under these factoring agreements, Creditor would provide cash advances to Debtor in return for the right to receive Debtor's future payments from the state.

In August 2016, Debtor filed a petition for Chapter 11 bankruptcy. Afterward, Debtor pursued a preference action under 11 U.S.C. § 547 to "claw back" the $134,745.95 in payments that Creditor had received from the state during the 90-day period preceding the initiation of the bankruptcy proceedings. Following discovery, Debtor and Creditor

filed cross-motions for summary judgment. The bankruptcy court, after holding oral argument and soliciting supplemental briefing from the parties, issued a detailed order granting summary judgment to Creditor.

Debtor now seeks review of the bankruptcy court's order, arguing that the decision to grant summary judgment to Creditor was both procedurally improper and flawed on the merits. As explained below, the Court agrees with Debtor's procedural objections. The only party that sought summary judgment on the threshold issue of whether the $134,745.95 in payments were avoidable under § 547(b) was Debtor. Creditor, in contrast, limited its request for summary judgment to its affirmative defense, under § 547(c), that it was entitled to a $54,000 offset against any sum that was ultimately deemed avoidable. Under these circumstances, the bankruptcy court was not authorized to, in effect, grant summary judgment to Creditor on the § 547(b) issue.

The Court will, however, affirm the bankruptcy court's grant of summary judgment to Creditor on its § 547(c) affirmative defense. Debtor's sole objection to this ruling—that the "new value" defense is unavailable to a creditor acting in bad faith—finds no support in the case law or the text of the statute. Finally, the Court will decline to resolve Debtor's substantive objections to the bankruptcy court's analysis of its § 547(b) claim because this case is being remanded to the bankruptcy court for further analysis and fact-finding on that issue.

**BACKGROUND ON SECTION 547**

Under § 547(b) of the Bankruptcy Code, a debtor may "avoid" certain transfers of its own property that were made during the 90-day period before the bankruptcy petition was filed. A transfer constitutes an avoidable preference if five elements are shown: (1) the transfer was made to or for the benefit of a creditor; (2) the transfer was made for or on account of an antecedent debt; (3) the transfer was made while the debtor was insolvent; (4) the transfer was made on or within 90 days before the date of the filing of the petition; and (5) the transfer enabled the creditor to receive more than it would have received in a Chapter 7 liquidation of the estate. 11 U.S.C. § 547(b). The purpose of avoidance is two-

fold: (1) to "facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor," by assuring that any "creditor that received a greater payment than others of his class is required to disgorge so that all may share equally"; and (2) to discourage creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy." *Union Bank v. Wolas*, 502 U.S. 151, 160-61 (1991) (citations omitted).

Section 547 "has two operative subsections: § 547(b) confers the power of avoidance on the trustee, listing five elements that must be satisfied for the transfer to be avoidable. . . . Section 547(c) contains exceptions to the trustee's avoidance power. Even if a transfer meets all the requirements of § 547(b), it cannot be avoided to the extent that it fits within one of the exceptions in § 547(c)." Brian A. Blum, *Bankruptcy and Debtor/Creditor* § 16.1.1, at 364 (6th ed. 2014).

Courts have emphasized that the issues of whether a transfer is avoidable under § 547(b) and whether an exception applies under § 547(c) are "analytically separate inquiries" that must be "consider[ed] . . . separately." *In re Ramba*, 416 F.3d 394, 398 (5th Cir. 2005). *See also In re Smith's Home Furnishings, Inc.*, 265 F.3d 959, 965-66 (9th Cir. 2001); *In re Resler*, 551 B.R. 835, 841 n.8 (Bankr. D. Idaho 2016) ("Trustee bears the burden of proving the elements of a § 547(b) preference are met and, once that is shown, [the transfer recipient] bears the burden of proving any § 547(c) affirmative defense.").

## FACTUAL AND PROCEDURAL BACKGROUND

A. <u>The Preference Period</u>

The dispute in this case turns on the transactions between Debtor and Creditor during the 90-day period preceding the initiation of bankruptcy proceedings: May 20, 2016 to August 18, 2016. (Doc. 14-24 at 4 n.6.) This is known as the "preference period." (*Id.*)

Between February 2015 and January 2016, Debtor agreed that state distributions for the months between August 2015 and May 2016 would be paid directly to Creditor. (Doc. 14-24 at 8.) In exchange, Creditor would loan Debtor funds. (*Id.* at 3.) During that period, Creditor advanced to Debtor a total of $508,102.26 and collected a total of $397,061.93.

(*Id.* at 8.) Thus, as of the start of the preference period, Debtor owed Creditor $111,040.33. (*Id.*)

During the preference period, Creditor collected a total of $134,745.95 directly from the state. (*Id.* at 9.) Additionally, Debtor's financial situation worsened during this period, so Creditor provided an additional $54,000. (*Id.*)[1] According to Debtor, Creditor "made it clear that Debtor was only to spend funds received from [Creditor] on expenses that would keep it operational—like employee wages—instead of paying other debts, and chastised Debtor if it did otherwise." (Doc. 14 at 5.)[2]

B. <u>Bankruptcy Court Proceedings</u>

On August 18, 2016, Debtor filed a voluntary petition for Chapter 11 bankruptcy. (Doc. 14-24 at 2.)

On February 14, 2017, Debtor filed a complaint in bankruptcy court seeking to avoid pre-petition distributions made to Creditor. (Doc. 15-2 at 2-15.) In Count IV of the complaint, Debtor argued that the payments Creditor received from the state during the preference period "are avoidable preferential transfers of funds under 11 U.S.C. §§ 547 and 550." (*Id.* at 15.) In its answer, Debtor asserted affirmative defenses under 11 U.S.C. § 547(c)(1) and (c)(4), among other provisions. (Doc. 15-3 at 10-11.)

On September 27, 2017, the parties filed cross-motions for summary judgment. (Doc. 14-11 [Debtor]; Doc. 14-12 [Creditor].) Notably, although Debtor sought summary judgment on the issue whether the $134,745.95 in payments Creditor received during the preference period were avoidable under § 547(b) (*see* Doc. 14-11 at 2), Creditor didn't seek summary judgment on this issue. Instead, as relevant here, Creditor only sought summary judgment on its affirmative defense, under § 547(c)(4), that it was entitled to a $54,000 offset under the "new value" doctrine against any sum that was ultimately deemed

---

[1] The actual sum was $67,000, but Creditor chose to limit its new value defense to $54,000. (Doc. 14-24 at 19 n.17.)

[2] Creditor has moved to strike certain statements in Debtor's brief on the ground that they unfairly paint Creditor in a negative light and are unsupported by the record. (Doc. 16.) This request will be denied—the Court did not rely on any of the challenged statements and it seems more trouble than it's worth to individually analyze each statement to determine whether it should be formally stricken.

avoidable. (Doc. 14-12 at 2 ["[Creditor] moves for partial summary judgment as to Count 4 of the Complaint based on its new value defense under Section 547(c)(4). [Creditor's] subsequent advances of new value during the Preference Period totaled $54,000.00, and limits [Creditor's] preference exposure accordingly."].)[3] Moreover, in its opposition to Debtor's summary judgment motion, Creditor argued that the bankruptcy court couldn't grant summary judgment as to whether the $134,745.95 in payments were avoidable under § 547(b) because "there is a genuine issue of material fact with respect to the amounts [Creditor] would have received in a hypothetical Chapter 7 bankruptcy case." (Doc. 14-15 at 3.)

On December 13, 2017, the bankruptcy court held oral argument on the cross-motions for summary judgment. (Doc. 14-21.) The argument can be broken down as follows:

▪ During the first portion of the argument, the court addressed Creditor's motion for summary judgment and held that several of Creditor's arguments (which aren't at issue in this appeal) lacked merit. (*Id.* at 3-9.)

▪ Next, the court addressed Debtor's motion for summary judgment. Debtor's counsel initially argued that "we think that the Court could grant summary judgment based on our hypothetical liquidation . . . because [Creditor] has not presented an alternative liquidation analysis and so the only evidence before the Court is what we've presented." (*Id.* at 14.)[4] In response, the court raised several concerns with Debtor's hypothetical

---

[3] In its motion, Creditor sought summary judgment or partial summary judgment on the following four issues: (1) the "earmarking doctrine," (2) the transfers were not Debtor's property, as required by § 547(b), because they were irrevocable assignments to Creditor, (3) a "new value" defense under § 547(c)(4); and (4) the "true sales" doctrine. (Doc. 14-12 at 2.) However, during oral argument, the bankruptcy court ruled against Creditor as to issues one, two, and four. (Doc. 14-21 at 3-4 ["I previously ruled that it wasn't a true sale and I'm continuing to take the position it's not a true sale . . . ."]; *id.* at 5 ["I don't think you win on the earmarking argument either."]; *id.* at 7 ["Creditor] make[s] the argument that . . . [it w]as not a transfer of the Debtor's property . . . . I find against you on that basis . . . ."]; *see also id.* at 33 [Creditor's withdrawal of "true sales" claim at conclusion of oral argument].) Creditor does not challenge those rulings here.

[4] As an attachment to its reply in support of its motion for summary judgment (not the initial motion), Debtor provided a declaration from its director, Grant Creech, which included a calculation of what Creditor would have received in a hypothetical Chapter 7 liquidation had Creditor not received the state payments. (Doc. 14-2.)

- 5 -

liquidation analysis, and Debtor's counsel responded by stating that "this argument wasn't made by [Creditor] so I think . . . if the Court denied us summary judgment on this issue we'd like the opportunity to review and . . . fully brief the issue." (*Id.* at 17.) Afterward, the court raised additional concerns with Debtor's hypothetical liquidation analysis, which related to the impact of an IRS lien. (*Id.* at 19-29.)

▪ Next, the court addressed Creditor's argument that it was entitled to summary judgment on its "new value" affirmative defense under § 547(c)(4). (*Id.* at 29-31.)

▪ Finally, after conferring with the parties and making clear that "I don't want to make this into another motion for summary judgment" (*id.* at 36), the court ordered the parties to submit supplemental briefing on the following three issues: (1) "more definition as to the issues [the Court] raised with respect to the hypothetical lien creditor analysis"; (2) "the application of new value after the reduction pursuant to the assignment"; and (3) "can the estate representative step into the shoes of the IRS and challenge [Creditor's] lien?" (*Id.* at 35.)

On January 5, 2018, Debtor filed a "supplemental brief in support of Plaintiff's motion for summary judgment." (Doc. 14-22.) In the introductory paragraph of the brief, Debtor stated that, during oral argument, the court had rejected all but one of the arguments contained in Creditor's motion for summary judgment (reserving judgment only as to the "new value" affirmative defense) and had solicited "additional briefing on a few discrete issues before ruling on whether Debtor is entitled to summary judgment." (*Id.* at 1-2.) Debtor then defended the sufficiency of its hypothetical Chapter 7 liquidation analysis, which suggested that "the entire $134,745.97 is a preference" (*id.* at 2-12), emphasized that Creditor "never submitted any evidence as to the hypothetical chapter 7 liquidation" (*id.* at 12 n.3), addressed Creditor's "new value" argument (*id.* at 13), and requested the entry of summary judgment in its favor (*id.* at 13-14). Debtor also requested an evidentiary hearing if the Court had any concerns regarding its hypothetical liquidation analysis. (*Id.* at 12 n.3.)

On January 19, 2018, Creditor filed its supplemental brief. (Doc. 14-23.) In it,

Creditor argued that "Debtor's hypothetical Chapter 7 analysis is riddled with flaws" and that "the ultimate preference exposure to [Creditor] after application of its new value defense depends on the Court's ruling as to [Creditor's] preference exposure." (*Id.* at 3.) Creditor also acknowledged that its "new value" affirmative defense—even if accepted by the court—wouldn't entitle it to complete relief under Debtor's hypothetical liquidation scenarios. (*Id.* at 12 ["Debtor's potential recovery must be reduced, at a minimum, . . . to $74,246.50. When combined with [Creditor's] new value defense, [Creditor's] preference liability is further reduced by the amount of the new value of $54,000, leaving $20,246.50."].) Thus, Creditor concluded that "the Court should enter an order denying summary judgment, or grant summary judgment in favor of Debtor only to the limited extent that [Creditor] is held liable." (*Id.*)

C. The Bankruptcy Court's Decision

On March 21, 2018, the bankruptcy court issued an order denying Debtor's motion for summary judgment, granting Creditor's motion for summary judgment, and dismissing Debtor's complaint. (Doc. 14-24.)

After determining that Creditor was undersecured because its claim was subordinate to the IRS's previously-perfected claim (*id.* at 10-15), the court addressed whether Creditor had collected more than the value of its secured claim. (*Id.* at 15-17.) As part of this analysis, the court applied the "add-back method" to calculate the value of the liquidation estate. (*Id.* at 9.) Specifically, the court added the stipulated value of Debtor's personal property to the amount of distributions made during the preference to conclude the total estate was worth $143,422.93. (*Id.*)[5] However, the court also concluded this figure needed to be reduced by $38,861.55—to $104,581.38—to account for a first-priority lien held by the IRS. (*Id.* at 17.) Because this figure was smaller than the amount Creditor actually collected during the preference period ($134,745.97), the court concluded that Creditor "collected $30,164.59 in excess of its secured claim during the Preference Period." (*Id.*)

---

[5] This amount is equal to the stipulated value of Debtor's personal property ($8,696.96), plus the amount of distributions made during the preference period ($134,745.97).

Next, the court considered Creditor's "new value" defense and its effect on Creditor's preference liability. (*Id.* at 17-19.)[6] The court concluded that Debtor provided "no legal support for its argument that the new value must be extended in 'good faith'" and thus concluded that Creditor advanced $54,000 of new value to Debtor during the preference period. (*Id.*)

Finally, the court addressed how Creditor would have fared in a hypothetical Chapter 7 liquidation. (*Id.* at 19-20.) When doing so, the Court rejected the approach set forth in the declaration submitted by Debtor and conducted its own analysis. The court concluded that (1) Creditor only had $80,745.97 in preference liability, because the actual distributions it received ($134,745.97) should be reduced by its in new value credit ($54,000); (2) the value of its collateral was $104,581.38 (*i.e.*, the value of the estate minus the IRS lien); and (3) because Creditor's collateral exceeded its preference liability, Debtor's claim necessarily failed and Creditor was entitled to summary judgment. (*Id.*)

## STANDARD OF REVIEW

A party seeking summary judgment "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To preclude summary judgment the dispute must be genuine, that is, it must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A reviewing court will affirm a grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to

---

[6] Although Creditor argued in its summary judgment papers that its "new value" defense arose under § 547(c)(4) (Doc. 14-12 at 2, 9-11; Doc. 14-19 at 4, 16), the bankruptcy court seemed to analyze the claim under § 547(c)(1) (Doc. 14-24 at 17-19).

the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. A bankruptcy court's grant of summary judgment is reviewed de novo." *In re Pioneer Tech., Inc.*, 107 B.R. 698, 700 (9th Cir. 1988) (citations omitted).

**ANALYSIS**

I. Procedural Error

In Section A of its opening brief, Debtor argues the bankruptcy court committed procedural error by granting summary judgment to Creditor. (Doc. 14 at 10-11.) Specifically, Debtor argues that, because it was the only party to submit affirmative evidence addressing how a hypothetical chapter 7 liquidation analysis would have proceeded, the bankruptcy court's disagreement with that analysis authorized the court, at most, to deny Debtor's summary judgment motion—the court couldn't go further and grant Creditor's cross-motion, particularly where Creditor admitted in its papers that the case involved a "genuine issue of material fact" as to how the hypothetical analysis would turn out. (*Id.*) In its response, Creditor argues that it wasn't required to submit a competing liquidation analysis in order to obtain summary judgment, that Debtor wasn't unfairly surprised by the court's liquidation analysis because the court set forth its rationale during the oral argument and then afforded Debtor the opportunity to submit supplemental briefing, and that the court's analysis was correct on the merits because the court was entitled to consider the record as a whole. (Doc. 15 at 6-9.) In its reply, Debtor repeats its position that "[e]ven if the Bankruptcy Court disagreed with Debtor's evidence or found it unpersuasive, because [Creditor] submitted no evidence to the contrary, the Court's only permissible option was to set the chapter 7 liquidation analysis for trial." (Doc. 18 at 4-5.)

The Court agrees with Debtor that the bankruptcy court shouldn't have granted summary judgment to Creditor under these circumstances. Debtor was the plaintiff in the underlying case and asserted a claim to recover over $134,000 from Creditor under the theory that the payments constituted preferential transfers under 11 U.S.C. § 547(b). When it came time to file motions for summary judgment, Creditor could have filed a *Celotex*-

style motion seeking summary judgment on this claim under the theory that Debtor, as the party bearing the burden of proof, couldn't meet its burden as to one of the elements of its claim (*i.e.*, the requirement, under § 547(b)(5), of showing that Creditor received more than it would have received in a hypothetical Chapter 7 liquidation). *See, e.g.*, *In re Simplexity, LLC*, 578 B.R. 255, 262 (Bankr. D. Del. 2017) ("Sprint does not dispute that the Trustee has successfully established the first four factors of Section 547(b). Sprint does, however, contend [in its cross-motion] that the Trustee has failed to satisfy Section 547(b)(5), arguing he cannot establish that Sprint received more through the preferential payments than it would have in a Chapter 7 liquidation.").

Creditor, however, didn't do this. Instead, Creditor only sought summary judgment on its affirmative defense, under § 547(c)(4), that it was entitled to a $54,000 offset against any sum that was ultimately deemed avoidable under § 547(b). Creditor also asserted, in its opposition to Debtor's motion for summary judgment, that there were disputed issues of fact concerning how the hypothetical liquidation analysis would turn out. (Doc. 14-15 at 10.) Creditor didn't even request an across-the-board grant of summary judgment in its supplemental brief following oral argument—it merely asked the court to deny Debtor's motion for summary judgment and to rule in its favor on its "new value" affirmative defense.

There are, to be sure, limited circumstances in which it might be permissible for a court to issue a *sua sponte* grant of summary judgment to a non-moving party. *See* Fed. R. Civ. P. 56(f); *Albino v. Baca*, 747 F.3d 1162, 1176-77 (9th Cir. 2014). Those circumstances, however, aren't present here. The bankruptcy court told the parties at the conclusion of oral argument—when it was soliciting supplemental briefing—that it wasn't seeking to expand the issues raised by the parties. (Doc. 14-21 at 36.) Furthermore, both parties' supplemental briefs suggested they viewed the only remaining live issues as (1) whether Debtor was entitled to summary judgment on its claim that the entire $134,745.95 was avoidable under § 547(b) and (2) whether Creditor was entitled to summary judgment on its claim that it was entitled to a $54,000 offset based on its § 547(c) affirmative defense.

Debtor also included a request in its supplemental brief for an evidentiary hearing should the court harbor any concerns with its hypothetical liquidation analysis, and Debtor identified—during the February 13, 2019 oral argument before this Court—some of the additional pieces of evidence it would have submitted had the bankruptcy court held such a hearing.

Moreover, it is unclear whether the bankruptcy court was entitled, for summary judgment purposes, to rule against Debtor on the merits of the § 547(b)(5) analysis (*i.e.*, the outcome of a hypothetical Chapter 7 liquidation) given that Debtor submitted evidence on this issue (the Creech affidavit) but Creditor did not. In *In re Pioneer Tech., Inc.*, 107 B.R. 698 (B.A.P. 9th Cir. 1988), the debtor in a § 547(b) action "submit[ted] an affidavit of its comptroller stating that [the creditor] received more via the transfers than it would have had the transfers not been made and had the estate been liquidated under Chapter 7." *Id.* at 701. In response, the creditor simply criticized the approach laid out in the debtor's affidavit and "submitted no other evidence rebutting the comptroller's contentions." *Id.* The bankruptcy court granted summary judgment to the debtor and the BAP affirmed, holding that the debtor had met its initial burden of production by submitting the affidavit and the creditor's response "was insufficient to preclude the grant of summary judgment on the Debtor's § 547 action." *Id.* It is difficult to reconcile *Pioneer* with the outcome here, where Creditor effectively prevailed on the § 547(b)(5) analysis despite not submitting any evidence to counter Debtor's affidavit. *See also In re AFA Investment, Inc.*, 2016 WL 908212, *3 (Bankr. D. Del. 2016) (holding that, for summary judgment purposes, a debtor's submission of an affidavit containing a hypothetical liquidation analysis is sufficient to satisfy the debtor's initial production under § 547(b)(5), and canvassing other cases reaching the same conclusion).

II. <u>Section 547(b) Analysis</u>

In Section B of its brief, Debtor argues that the bankruptcy court's § 547(b) analysis was flawed for four reasons: (1) it improperly utilized the add-back method; (2) it improperly limited the value of the IRS's secured claim to $38,861.55, when the figure

should have been $62,521.31; (3) it failed to consider that the perfection of Creditor's security interest in the August payment was an avoidable preference in and of itself; and (4) it improperly incorporated the "new value" defense into the liquidation figures, when it should have waited to apply that defense until after the § 547(b) analysis was complete. (Doc. 14 at 12-20.) In its response, Creditor disagrees and argues that the bankruptcy court's analysis on each of these issues was correct. (Doc. 15 at 9-16.)

The Court is disinclined to resolve these arguments because, as discussed above, this matter will be remanded to the bankruptcy court for further evidentiary development and factfinding concerning the § 547(b) analysis.

III. "New Value" Affirmative Defense

In Section C of its brief, Debtor argues that the bankruptcy court erred in granting summary judgment to Creditor on its $54,000 "new value" affirmative defense. (Doc. 14 at 21-22.) Debtor's sole argument on this point is that Creditor should have been deemed ineligible for this defense because it acted in bad faith. (*Id.*) In its response, Creditor argues that the bankruptcy court correctly rejected this argument. (Doc. 15 at 16-17.)

The Court agrees with Creditor. No court has accepted the argument that Debtor advances here and several have affirmatively rejected it. *See, e.g.*, *In re Schabel*, 338 B.R. 376, 382 (Bankr. E.D. Wis. 2005) ("[T]here is no statutory requirement that the new value . . . be made in good faith by the creditor."); *In re George Transfer, Inc.*, 259 B.R. 89, 94 (Bankr. D. Md. 2001) ("[T]here is no statutory requirement that the advance be related to the preference or that the advance be made in good faith by the creditor."). It is also notable that, although other provisions of the bankruptcy code include express "good faith" provisions,[7] the provision at issue here does not. Its absence suggests Congress did not intend for a good-faith requirement to apply in this context. *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a

---

[7] *See, e.g.*, 11 U.S.C. § 550(b) ("The trustee may not recover under section (a)(2) of this section from . . . (1) a transferee that takes for value . . . in good faith, and without knowledge of the voidability of the transfer avoided; or (2) any immediate or mediate good faith transferee.").

statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted). Indeed, although the predecessor statute on which § 547(c)(4) was based included an express "good faith" requirement, Congress excised that requirement many years ago. *Schabel*, 338 B.R. at 382 n.2 (noting that "Section 60(c) of the former Bankruptcy Act, from which section 547(c)(4) was derived, did include a good faith requirement") (citing 11 U.S.C. § 96(c) (1978)).

## CONCLUSION

The Court respectfully concludes that the bankruptcy court shouldn't have issued an across-the-board grant of summary judgment to Creditor. Instead, it should have—after denying Debtor's motion for summary judgment and granting Creditor's motion for partial summary judgment as to the "new value" affirmative defense—held an evidentiary hearing or trial to resolve the remaining issues in the case. Although Creditor may very well prevail at the conclusion of that process—the Court expresses no views on the ultimate merits—Creditor's failure to seek summary judgment on any issue beyond one affirmative defense (which it conceded wouldn't entitle it to a complete victory) requires reversal here.

Accordingly, **IT IS ORDERED** that:

(1) Creditor's limited objections to Debtor's opening brief (Doc. 16) are **denied**;

(2) The grant of summary judgment to Creditor is **affirmed in part and reversed in part.** The Clerk of Court is directed to enter judgment accordingly; and

(3) This case is **remanded** to the U.S. Bankruptcy Court for the District of Arizona for further proceedings not inconsistent with this Order. The Clerk of Court is directed to close this case.

Dated this 15th day of February, 2019.

Dominic W. Lanza
United States District Judge